UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    v.                                               **DECISION AND ORDER**
                                                        07-CR-304S

CARL A. LARSON, ET AL.,

                        Defendants.

## I. INTRODUCTION

Pending before this Court is the second motion of Defendant Gerald E. Bove to dismiss Count One of the Superseding Indictment ("Sup. Indict."). (Docket No. 244.) Defendants Mark N. Kirsch, George Dewald, Michael J. Eddy, Michael J. Caggiano, Jeffrey A. Peterson, Jeffrey C. Lennon, Thomas Freedenberg, and Kenneth Edbauer have joined in this motion.[1] (Docket No. 266.) For the reasons discussed below, Defendants' motion will be denied.

## II. BACKGROUND

This is a criminal action brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), and the Hobbs Act, 18 U.S.C. § 1951. Over the course of about eleven years, Defendants, members of a construction union known as "Local 17," are alleged to have engaged in threats, physical violence, and property damage in an attempt to force construction employers in Western New York to hire Local 17 members for their projects.

---

[1]The only other remaining Defendant, Carl A. Larson, did not join this motion.

1

In April 2010, Defendants jointly filed two motions to dismiss the Superseding Indictment(Docket No. 4), which were heard by the Honorable Hugh B. Scott, United States Magistrate Judge.  On October 12, 2010, Judge Scott issued a Report and Recommendation ("R&R") recommending Defendants' motions be granted.  (Docket No. 184.)  The Government filed objections to the R&R.  After full briefing by the parties and oral argument, on August 10, 2011, this Court issued a Decision and Order setting aside Judge Scott's recommendations and denying the motions to dismiss.[2]  (Docket No. 229.)

On October 13, 2011, Defendant Bove moved for leave to file a second motion to dismiss.  This Court granted the motion, along with the motions of Defendants Kirsch, Dewald, Eddy, Caggiano, Peterson, Lennon, Freedenberg, and Edbauer to join Defendant Bove's motion.  (Docket Nos. 249, 266.)  The government filed a response to Defendants' motion, to which Defendants replied.  (Docket Nos. 251, 263.)

### III. DISCUSSION

**A.  Legal Standards**

Rule 12(b) of the Federal Rules of Criminal Procedure provides that a motion to dismiss may raise "any defense, objection, or request that the court can determine without a trial of the general issue."  Fed. R. Crim. P. 12(b)(2).  A pre-trial motion to dismiss an indictment under Rule 12 must satisfy a "high standard."  United States v. Lazore, 90 F.Supp.2d 202, 203 (N.D.N.Y. 2000).  In deciding a motion to dismiss an indictment for failure to state a criminal offense, a court must assume the truth of the allegations in the

---

[2]This Court denied Defendants' joint motion for reconsideration of its decision.  (Docket No.  267.)

indictment and determine whether the indictment is valid on its face.  United States v. Bicoastal Corp., 819 F.Supp. 156, 158 (N.D.N.Y. 1993).  This Court is not permitted to "look[] beyond the face of the indictment and [draw] inferences as to the proof that would be introduced by the government at trial[.]"  United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998).

Rule 7(c) of the Federal Rules of Criminal Procedure requires that an indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c).  An indictment is constitutionally sufficient if it (1) contains the essential elements of the offense charged so as to inform the defendant of the nature and cause of the accusation; (2) contains enough detail to enable the defendant to plead double jeopardy in a future prosecution based on the same set of facts; and (3) prevents prosecution for crimes based on evidence not presented to the grand jury.  United States v. Walsh, 194 F.3d 37, 44 (2d Cir. 1999) (citing United States v. Silverman, 430 F.2d 106, 110 (2d Cir.), modified, 439 F.2d 1198 (2d Cir. 1970)).

## B.  Sufficiency of Count One of the Indictment

At the outset, this Court notes that Defendants' motion only seeks dismissal of Count One of the Superseding Indictment, which alleges a RICO conspiracy.  Defendants Caggiano and Freedenberg, however, are not charged in Count One.  Defendant Caggiano is charged in Counts Two and Three (Hobbs Act conspiracy and one count of attempted Hobbs Act extortion), and Defendant Freedenberg is charged in Counts Two and Eight (same).  (See Sup. Indict. at pp. 32, 53, 59.)  As such, this Court will deny the motions of Defendants Caggiano and Freedenberg as moot.

Count One of the Superseding Indictment alleges in relevant part:

> There existed in the Western District of New York, and elsewhere, an "Enterprise" as that term is defined in Title 18, United States Code, Section 1961(4); namely, a labor union and a group of individuals associated in fact. The Enterprise consisted of a labor union known as [Local 17], a labor organization as defined under the Labor Management Relations Act, Title 29, United States Code, Section 152(5) . . . and defendants CARL A. LARSON, JAMES L. MINTER III, MARK N. KIRSCH, GERALD H. FRANZ, JR., JEFFREY A. PETERSON, GERALD E. BOVE, JEFFREY C. LENNON, KENNETH EDBAUER, GEORGE DEWALD, and MICHAEL J. EDDY, and others, known and unknown to the grand jury, who were associated in fact and will be hereinafter referred to as the Local 17 Criminal Enterprise.

(Sup. Indict. at 2.) Additionally, the indictment alleges that, from on or about January 1, 1997 to December 2007, "the Local 17 Criminal Enterprise functioned as a continuing unit for a common purpose to achieve shared objectives[.] . . . The Local 17 Criminal Enterprise was engaged in, and its activities affected, interstate commerce." (Sup. Indict. at 2-3.)

The indictment goes on to describe the various roles of Defendants in the alleged enterprise. For example, Defendant Kirsch is described as a "primary figure within the Local 17 Criminal Enterprise and a member of Local 17. Kirsch is currently the President and Business Manager for Local 17 and has held those positions continuously since 1997." (Sup. Indict. at 3.) Defendant Peterson is described as a "member" of Local 17 "who also occupied positions of influence within the Local 17 Criminal Enterprise, including, Guard, Organizer, Financial Secretary and Business Representative since at least 2000." (Sup. Indict. at 4.) Defendant Bove is alleged to be a "member of Local 17 who also occupied positions of influence within the Local 17 Criminal Enterprise, including, Vice President and Business Representative from at least 2000 through his retirement in 2004." (Sup. Indict. at 4.) Defendants Lennon, Edbauer, Dewald, and Eddy are alleged to be "members" of

4

Local 17 and "associated with the Local 17 Criminal Enterprise." (Sup. Indict. at 4.)

The indictment describes the objectives of the Local 17 Criminal Enterprise to include "attempts to obtain by extortion" the property – primarily jobs – of various construction employers throughout Western New York. (Sup. Indict. at 5.) The indictment continues:

> [D]efendants . . . together and with others, both known and unknown, being persons employed by and associated with the Local 17 Criminal Enterprise, which was engaged in, and the activities of which affected, interstate commerce, unlawfully and knowingly combined, conspired, confederated and agreed, together, with each other, and with others, to violate the provisions of Title 18, United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Local 17 Criminal Enterprise through a pattern of racketeering activity . . .
>
> It was a part of the conspiracy that during the aforesaid period, [Defendants], together and with others, agreed that a conspirator employed by or associated with the Local 17 Criminal Enterprise would commit at least two acts of racketeering activity in the conduct of the affairs of the Local 17 Criminal Enterprise.

(Sup. Indict. at 8-9.)

Defendants contend that Count One of the Superseding Indictment is facially insufficient because it does not adequately describe the existence of a criminal "enterprise," as is required to charge Defendants with a RICO conspiracy under 18 U.S.C. § 1962(d). In particular, Defendants argue that the government has failed to describe an entity with the requisite purpose, relationships among the participants, and longevity to qualify as an "enterprise" under RICO. (Mem. in Support of Mot. Dismiss at 4 (citing Boyle v. United States, ___ U.S. ___, 129 S.Ct. 2237, 2243-44, 173 L.Ed.2d 1265 (2009).) Defendants maintain that "[t]he concept of an 'enterprise' in this case is so abstract and

5

insubstantial that it is imponderable to imagine how it could be proven to 'exist' or, for that matter proven *not to exist*." (Id. at 5 (emphasis in original).)  Because the indictment fails to adequately allege an essential element of the crime of RICO conspiracy, Defendants contend Count One must be dismissed.

The threshold question is whether the indictment is required to allege the existence of an "enterprise" in charging Defendants with racketeering conspiracy under 18 U.S.C. § 1962(d).  The relevant substantive RICO offense prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c).  In turn, the RICO conspiracy provision states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d).

The Court of Appeals for the Second Circuit recently addressed the question of whether the establishment of an "enterprise" is an essential element of the crime of RICO conspiracy under § 1962(d). In <u>United States v. Applins</u>, 637 F.3d 59 (2d Cir. 2011), <u>cert. denied by</u> <u>Pierce v. United States</u>, ___S.Ct.___, 2011 WL 3958466 (Oct. 11, 2011), defendants allegedly were members of a Syracuse, New York, street gang known as the "Elk Block" gang.  Id. at 62-63.  The indictment alleged the gang engaged in drug trafficking, firearms violations, murder, and other offenses.  Id. at 63.  The indictment alleged that the Elk Block gang, including its "leadership, members, and associates, constituted an enterprise as defined by [18 U.S.C. § 1961(4)]," and that its members "conspired to participate in the affairs of the Elk Block enterprise through a pattern of

6

racketeering activity." Id. The indictment further alleged that the defendants "did combine, conspire, confederate, and agree together and with each other and with others known and unknown to the grand jury, to violate [18 U.S.C. §] 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity. . . . It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise." Id.

At trial, the court, at the request of defense counsel, gave the following instruction to the jury:

> In order to convict a defendant on the RICO conspiracy offense charged in Count 1, the Government must prove all of the following four elements beyond a reasonable doubt:
>
> First, that an enterprise would be established as alleged in the indictment.
>
> Second, that the enterprise would be engaged in or its activities would affect interstate or foreign commerce.
>
> Third, that the defendant would be employed by or associated with the enterprise.
>
> And fourth, that the defendant knowingly agreed to conduct or participate directly or indirectly in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity.

Id. at 72. The court also gave the following charge:

> To convict each defendant on the RICO conspiracy offense charged in Count I, the Government is not required to prove that the alleged enterprise was actually established, that the defendant was actually employed by or associated with the enterprise, or that the enterprise actually engaged in or its activities actually affected interstate or foreign commerce. Rather, because the agreement to commit a RICO offense is

> the essence of a RICO conspiracy offense, the Government need only prove that if the conspiracy offense were completed as contemplated, the enterprise would be established, that the defendant would be employed by or associated with the enterprise, and that the enterprise would be engaged in or its activities would affect interstate or foreign commerce.
>
> Now first, to prove the RICO conspiracy violation charged in Count 1, the Government must prove beyond a reasonable doubt the existence of an enterprise. The enterprise alleged in the indictment is the Elk Block gang.

Id. The defendants challenged the above instructions insofar as they permitted the jury to convict them of a RICO conspiracy without a finding that an enterprise actually existed. Id.

The Second Circuit observed that "the Supreme Court in Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352, (1997), provided some guidance as to what is necessary for a RICO conspiracy conviction under § 1962(d)." Id. at 73. In Salinas, a unanimous Court, resolving a Circuit split as to whether a RICO conspiracy provision requires proof that a defendant committed or agreed himself to commit two or more predicate acts, held that "[t]here is no requirement of some overt act or specific act in [§ 1962(d)], unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an 'act to effect the object of the conspiracy.'" 552 U.S. at 63 (quoting 18 U.S.C. § 371). The Court stated that "[t]he RICO conspiracy provision . . . is even more comprehensive than the general conspiracy offense[.]" Id.

The Salinas Court also rejected the argument that the RICO conspiracy provision required proof that a substantive offense was actually committed, stating: "It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues,

8

for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself." 552 U.S. at 65 (citing Callanan v. United States, 364 U.S. 587, 594, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961)).

The Applins court further noted that, "for purposes of establishing a RICO conspiracy, 'the government [is] required to prove only the existence of an agreement to violate RICO's substantive provisions. Thus, the government necessarily ha[s] to establish that [the defendant] agreed with his criminal associates to form the RICO enterprise.'" 637 F.3d at 74-75 (quoting United States v. Benevento, 836 F.2d 60, 73 (2d Cir. 1987), abrogated on other grounds by United States v. Indelicato, 865 F.2d 1370 (2d Cir. 1989)). Additionally, to be convicted of a RICO conspiracy, "one must be shown to have possessed knowledge of only the general contours of the conspiracy." Id. at 75 (quoting United States v. Zichettello, 208 F.3d 72, 100 (2d Cir. 2000)).

In light of the above precedent, the Applins court concluded: "Salinas counsels that the establishment of an enterprise is not an element of the RICO conspiracy offense." Id. at 75. The court determined that the jury instructions given at trial were erroneous insofar as they required the government to prove the establishment of an enterprise as an element of the RICO conspiracy charge, but found that defendants were not prejudiced by the error.[3] Id.

---

[3]The Applins court distinguished the case at bar from earlier cases suggesting, in *dicta*, that proof of an enterprise was required to establish a RICO conspiracy, because in those cases "the government relied on evidence of the actual existence of an enterprise and pattern of racketeering acts to prove the conspiracy[.]" Id. at 75 n.4 (citing United States v. Reifler, 446 F.3d 65, 88 (2d Cir. 2006), and Zichettello, 208 F.3d at 99). Thus, evidence of the existence of an enterprise, while not required to establish a RICO conspiracy, might still be important proof that the conspiracy took place. See also United States v. Pizzonia, 577 F.3d 455, 463 (2d Cir. 2009) ("Just as the evidence used to establish the enterprise and pattern elements 'may in particular cases coalesce,' . . . so too may the evidence used to prove those elements and a conspiratorial agreement to engage in racketeering[.]") (citing cases).

Under Applins, it is clear that the government is not required to prove the establishment of an enterprise in order to convict Defendants of RICO conspiracy, as charged in Count One. Accordingly, the allegations in the indictment regarding the "Local 17 Criminal Enterprise" are unnecessary to state the offense of RICO conspiracy and do not prejudice Defendants. Cf. United States v. Miller, 471 U.S. 130, 136, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985) ("As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime.") (citing cases).

This Court concludes Count One of the indictment adequately alleges the necessary elements of a RICO conspiracy. The indictment alleges that the charged Defendants "unlawfully and knowingly combined, conspired, confederated and agreed, together, with each other, and with others, to violate the provisions of Title 18, United States Code, Section 1962(c); that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Local 17 Criminal Enterprise through a pattern of racketeering activity," and that "[i]t was a part of the conspiracy that during the aforesaid period, [Defendants], together and with others, agreed that a conspirator employed by or associated with the Local 17 Criminal Enterprise would commit at least two acts of racketeering activity in the conduct of the affairs of the Local 17 Criminal Enterprise." (Sup. Indict. at 9.) This alleges an agreement to conduct the affairs of an enterprise through a pattern of racketeering activity, and as such is sufficient to state a RICO conspiracy offense under 18 U.S.C. § 1962(d). Applins, 637 F.3d at 74 (noting that to prove a RICO conspiracy, the government must establish the existence of an agreement to violate RICO's substantive provisions).

Moreover, even if the government were required to allege the actual existence of an enterprise to prove the crime of RICO conspiracy, this Court concludes the allegations in the indictment regarding the enterprise are sufficient. Under RICO, an enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]" 18 U.S.C. § 1961(4). "This enumeration of included enterprises is obviously broad, encompassing '*any* . . . group of individuals associated in fact." Boyle v. United States, ___ U.S. ___, 129 S.Ct. 2237, 2243, 173 L.Ed.2d 1265 (2009) (quoting § 1961(4)). The RICO statute provides that its terms are to be "liberally construed to effectuate its remedial purposes." Id. (quoting the legislative history of 18 U.S.C. § 1961 (Pub. L. 91-452, § 904)).

The Supreme Court held in Boyle that "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle, 129 S.Ct. at 2243 (quoting United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id. (quoting Turkette, 452 U.S. at 583).

The Boyle Court identified several structural features that must be possessed by an association-in-fact RICO enterprise: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 2244. The existence of an enterprise with these requisite structural characteristics may be inferred from evidence that those associated with the alleged

11

enterprise engaged in a pattern of racketeering activity.[4]  Id. at 2245 ("We recognized in Turkette that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'") (quoting Turkette, 452 U.S. at 583).

The indictment here sufficiently alleges the existence of an enterprise under the principles set forth in Boyle.  The indictment sets forth the alleged objectives of the Local 17 Criminal Enterprise – primarily, to obtain through extortion the property (jobs) of construction employers in Western New York.  The indictment also alleges relationships among the actors, insofar as they are alleged to be the union itself, union members, and others with either "primary," influential, or associational roles in the criminal enterprise.  Finally, the criminal enterprise is alleged to have operated for more than ten years, giving it the longevity required by Boyle.[5]  129 S.Ct. at 2244.

---

[4]The Court explained that a RICO enterprise

> need not have a hierarchical structure or a "chain of command"; decisions may be made on an ad hoc basis and by any number of methods–by majority vote, consensus, a show of strength, etc.  Members of the group need not have fixed roles; different members may perform different roles at different times.  The group need not have a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.  While the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence.  Nor is the statute limited to groups whose crimes are sophisticated, diverse, complex, or unique; for example, a group that does nothing but engage in extortion through old-fashioned, unsophisticated, and brutal means may fall squarely within the statute's reach.

Id. at 2245-46.

[5]Further, it is settled that an enterprise may be a hybrid of both institutional entities and individuals, as alleged here.  See United States v. Butler, 954 F.2d 114, 120 (2d Cir. 1992) ("An 'enterprise' under the RICO statute may consist of more than one entity, so long as those entities 'have been connected by a defendant's participation in them through a pattern of racketeering activity.'")

Defendants argue that if the Local 17 Criminal Enterprise is not synonymous with the Local 17 union itself, it loses the key properties of the union's "purpose, organization, and *milieu*," making it unascertainable as a distinct association-in-fact enterprise. (Defs.' Reply at 2.) Again, this Court emphasizes that, under Applins, the actual establishment of an enterprise need not be alleged as an element of a RICO conspiracy. Moreover, this Court disagrees with Defendants' reasoning. The indictment does not merely borrow the union's own purposes, longevity, structure and internal relationships in describing the distinct association that is the Local 17 Criminal Enterprise. Instead, it details the criminal enterprise's independent objectives (taking by extortion the property of construction employers), and its duration (1997 through 2007).

While the indictment describes several individual Defendants' leadership roles in the union itself, it also provides a description of those Defendants' roles within the alleged criminal enterprise. Some Defendants are described as "primary figures" within the enterprise, and some are described as influential or "associated with" the enterprise. Any failure to specify each Defendant's particular role or title in the criminal association is not fatal to the sufficiency of the enterprise allegations, for Boyle made clear that it is not necessary for an enterprise to have a clearly defined hierarchy, chain of command, or fixed roles of the participants. 129 S.Ct. at 2245-46. The indictment is adequate in its allegations that the various Defendants associated together for the purpose of accomplishing the criminal enterprise's nefarious objectives. As such, the indictment

---

(quoting United States v. Stolfi, 889 F.2d 378, 380 (2d Cir. 1989)); United States v. Huber, 603 F.2d 387, 393-94 (2d Cir. 1979) (rejecting argument that a group of corporations could not be an "enterprise"); United States v. Local 1804-1, Intern. Longshoremen's Ass'n, 812 F.Supp. 1303, 1310-11 (S.D.N.Y. 1993) (proof established an enterprise consisting of the union, union officials, local businessmen, and organized crime family members), modified, 831 F.Supp. 167 (S.D.N.Y. 1993).

sufficiently describes the key features of the broadly-defined RICO enterprise, and therefore satisfies Boyle.

## IV.  CONCLUSION

In sum, Count One of the indictment sufficiently alleges the elements of a RICO conspiracy. Accordingly, Defendants' Second Motion to Dismiss will be denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Bove's Second Motion to Dismiss (Docket No. 244), which has been joined by Defendants Mark N. Kirsch, George Dewald, Michael J. Eddy, Michael J. Caggiano, Jeffrey A. Peterson, Jeffrey C. Lennon, Thomas Freedenberg, and Kenneth Edbauer (Docket No. 266), is DENIED.

SO ORDERED.

Dated:    December 5, 2011
          Buffalo, New York

                                            /s/William M. Skretny
                                            WILLIAM M. SKRETNY
                                            Chief Judge
                                            United States District Court